[Civ. No. 22341. Third Dist. Jan. 4, 1985.]

JOHN GRIFFIS, Plaintiff and Respondent, v.
COUNTY OF MONO et al., Defendants and Appellants.
ASPEN CREEK PHASE II, LTD., Real Party in Interest and Appellant.

416

## COUNSEL

Neil B. Van Winkle, County Counsel, John M. Gallagher, Deputy County Counsel, Gilchrist & Rutter, Richard I. Gilchrist and Frank Gooch III for Defendants and Appellants and for Real Party in Interest and Appellant.

Michael A. Ross and David S. Baumwohl for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Plaintiff, John Griffis, commenced this taxpayer's suit against the County of Mono, its board of supervisors (Board), its planning commission (Commission), and a real-estate development partnership, Aspen Creek Phase II, Ltd. (Aspen Creek) to challenge the county's approval of the final map of the second phase of a subdivision. Plaintiff did not allege that any condition in the tentative remained unsatisfied or that the subdivision would cause any harm. Rather, his principal contention was that the Commission had been without legal authority to grant an extension of the

tentative map nearly a year earlier. According to plaintiff, because the extension by the Commission was void, the tentative map expired before the final map was approved, so that final map approval was also void.

The trial court granted plaintiff injunctive and mandamus relief effectively setting aside approval of the final map. The court also awarded plaintiff $100,000 in attorneys fees. Aspen Creek, Mono County, and its Board and Commission appeal. We conclude plaintiff's principal claims are barred by the statute of limitations set forth in Government Code section 66499.37,[1] a part of the Subdivision Map Act (Map Act) (§ 66410 et seq.). We further conclude plaintiff's other claims of illegality are without merit; we therefore reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Griffis is a resident and taxpayer of Mammoth Lakes, located in Mono County. He asserts no other interest in the litigation.[2]

Aspen Creek is an investment partnership formed for the purpose of developing certain real property located in Mammoth Lakes.

On February 27, 1979, the Board conditionally approved Aspen Creek's tentative map of a subdivision of 180 condominium units for 18 months, until August 27, 1980.

Thereafter, Aspen Creek decided to complete a portion of the development (Phase I) consisting of 83 condominium units with the remaining portion (Phase II), 97 units, to be built at a later date.

In July 1979, Aspen Creek was granted water and sewer permits for the entire development.

In August 1979 the Board approved the final map of Phase I of the development. (See § 66456.1)

On June 26, 1980, Aspen Creek's engineer requested and the Commission granted a one-year extension of the tentative map so that it would expire August 27, 1981.

On August 27, 1981, Aspen Creek's engineer requested and the Commission granted a second one-year extension of the tentative map until Au-

---

[1] *Statutory references are to the Government Code unless otherwise indicated.*

[2] Because the parties have not raised the issue, we assume without deciding that Griffis has standing to commence this action.

gust 27, 1982, subject to conditions not here relevant. A deputy county counsel advised the Commission the second extension could be lawfully granted.

After the second extension was granted, Aspen Creek undertook and completed grading work on phase II. It took out a construction loan in the amount of $780,000 on which it paid loan fees of $54,000 and interest of $120,000. Aspen Creek submitted evidence showing it spent about $47,000, in addition to loan expenses, on Phase II between November 25, 1981, and April 5, 1982.[3]

On March 29, 1982, the same deputy county counsel who had previously advised the Commission the second map extension was lawful wrote to Aspen Creek informing it that the second extension could be unlawful because section 17.20.020 of the Mono County Code authorized a maximum extension of only one year.[4]

On April 8, 1982, the Commission, upon recommendation of the deputy county counsel, rescinded its decision of August 27, 1981, that had granted Aspen Creek the second one-year extension of the tentative map.

The trial court found, and plaintiff agrees, that on April 13, 1982, Aspen Creek appealed the rescission decision to the Board. Aspen Creek also requested that the Board approve its final map at its next meeting on April 20, 1982.

On April 20, 1982, the Commission approved Aspen Creek's final map in a vote conducted by telephone. Later on the same day, the Board voted to deny Aspen Creek's request for final map approval and made findings that are set forth in the margin.[5]

---

[3]In its statement of decision the trial court criticized the evidentiary basis of some of the expenditures but assumed arguendo they were made in good faith reliance on the second tentative map extension.

[4]We take judicial notice of applicable sections of the Mono County Code. (Evid. Code, §§ 452, subd. (b), 459, subd. (a).)

[5]The Board's findings were "that the Board is without jurisdiction to act on Final Tract Map 36-84/Aspen Creek; further the matter is not properly before the Board under the Mono County Code, at least in part by reason of the alleged violation of the Brown Act by the Planning Commission; and finally finding that there is no misrepresentation by county staff and no justifiable reliance by the developer on county staff's representation and/or the Planning Commission's action of August 1981." On April 27, 1982, the Board amended its minute order of April 20, that had denied final map approval, "to reflect the finding of the Board that it was without jurisdiction to act on the Final Map based on two reasons: [¶] 1. The moratorium imposed by the Mammoth County Water District did not apply to this project inasmuch as the developer had obtained MCWD permits prior to the imposition of the moratorium; and [¶] 2. The final map did not conform to the County subdivision ordinance."

On June 22, 1982, the Board voted to "ratify" the Commission's August 27, 1981, grant of the tentative map extension. The Board also made findings that are set forth in full in the margin.[6]

On June 24, 1982, the Commission approved Aspen Creek's final map in a regular meeting. On July 6, 1982, the Board approved the final map; it was recorded July 30, 1982.

On August 4, 1982, nearly a year after the second extension of the tentative map by the Commission, plaintiff filed this action as a petition for writ of mandate seeking rescission of approval of the final map, a declaration that the tentative map had expired, and an injunction enjoining further construction of the development.

On April 20, 1983, the trial court entered judgment issuing a peremptory writ of mandate directing Mono County, the Board, and the Commission to vacate the Board's "ratification" of June 22, 1982, and all approvals of the final map. The writ also commanded those defendants to revoke certain building permits. The court also enjoined all further construction on the project. Finally, the court awarded plaintiff $100,000 in attorneys fees. Defendants appeal from the judgment.

---

[6]The Board's findings were as follows: "1. That the matter of Tract Map 36-84, Aspen Creek, Phase II, is properly before the Board of Supervisors and further within the concept and intent and in furtherance of the provisions of Section 17.20.020 of the Mono County Code and a new tentative map is not required at this time.

"2. That there is a finding of uniqueness and unusual circumstances related to actions on this particular tract map and the Planning Commission map extension approval on August 27, 1981.

"3. That the initial Environmental Impact Report and the Supplemental Environmental Impact Report heretofore approved by the County on Tract Maps 36-84 are hereby ratified and re-confirmed and further, the heretofore findings of consistency with the General Plan are ratified and confirmed.

"4. That the action taken herein is in keeping with and furthers the intent of recent amendments to Government Code Section 66452.6(e) extending the maximum period for the extension of a tentative map.

"5. That the herein action is taken by the Board of Supervisors without accepting arguments propounded by applicant's legal counsel and without prejudice to the County in respect to such legal arguments and the herein action is taken within the Board's decision-making power and within the best interests of the County and interested parties.

"6. That there has been technical error and/or inadvertence within the provisions of Government Code Sction [sic] 66473 authorizing the continuation of the map process on the further finding there has been technical errors or inadvertence, which in the determination of this local agency, does not materially affect the validity of the map before this Board and further that such finding of inadvertence and/or mistake is made without finding of prejudice on the part of the County and/or the developer."

DISCUSSION

I

A

Plaintiff's principal contention in the trial court was that the Commission was without legal authority to grant the second year-long extension of the tentative map (hereafter second extension) on August 27, 1981.

In August 1981, section 17.12.070 of the Mono County Code authorized the Commission to approve or conditionally approve tentative maps. Mono County Code section 17.20.020 provided at the time: "Within eighteen months after approval or conditional approval of the tentative map or maps, the subdivider may cause the subdivision, or any part thereof, as provided in Section 17.20.170, to be surveyed and a final map to be prepared in accordance with the tentative map as approved. Upon application of the subdivider, *an extension of time not exceeding one year may be granted by the governing body.* Failure to record a subdivision or parcel map within the time limits shall terminate all proceedings. A new tentative map shall be required and processed as a new application before a final map can be recorded."[7] (Italics added.)

At trial, plaintiff's sole contention of illegality of the second extension was that it was in excess of the one year authorized by Mono County Code section 17.20.020, because Aspen Creek had already used up its year by the extension obtained June 26, 1980. Indeed, the *duration* of an extension had been the sole ground of illegality urged by the deputy county counsel when he recommended to the Commission that it rescind the extension of the tentative map granted some seven months earlier.

---

[7]On October 5, 1982, this section was amended to provide: "A. An approved or conditionally approved tentative map shall expire twenty-four months after its approval or conditional approval. [¶] B. Upon written application filed with the clerk to the board of supervisors not later than forty-five days prior to the expiration of the approved or conditionally approved tentative map, *the time at which the map expires may, at the discretion of the board of supervisors, be extended for a one-year period or successive one-year periods not to exceed a total of three additional years.* [¶] C. The expiration of the approved or conditionally approved tentative map shall terminate all further proceedings thereon, and no applications for extensions or modifications shall be considered, and no final map of all or any portion of the real property included within the tentative map, shall be filed without first processing a new tentative map." (Italics added.)

 Defendants argue that any attack on the legality of the second extension in this action is barred by the statute of limitations set forth in section 66499.37. ██ We agree.[8]

 Section 66499.37 provides: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings."

Section 66499.37 required plaintiff to attack the Commission's decision within 90 days of August 27, 1981. Plaintiff's legal attack, launched nearly a year after the Commission's decision, is fatally tardy. Section 66499.37 bars plaintiff, in this action, from attacking, setting aside, voiding or annulling the second extension of the tentative map granted by the Commission. (See *Kirk* v. *County of San Luis Obispo* (1984) 156 Cal.App.3d 453, 460-461 [202 Cal.Rptr. 606]; *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501, 506 [191 Cal.Rptr. 140]; *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 359 [176 Cal.Rptr. 620]; *Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [150 Cal.Rptr. 606].) As to plaintiff, the second extension was lawfully granted.[9]

B

Plaintiff also contends his lawsuit challenges the Commission's approval of the final map on June 24, 1982, so that his lawsuit, filed within 90 days of that act, is timely. To the extent plaintiff seeks to challenge the legality

---

[8]While defendants pled the defense of laches in their answer, they did not plead the relevant statute of limitations. (§ 66499.37.) However, evidence was adduced on the subject, the parties litigated the issue in the trial court as if properly joined, findings were made as proposed by plaintiff and no objection was raised by plaintiff below or on appeal. Consequently, the issue is properly before this court and plaintiff is estopped from contending otherwise. (See *Sumitomo Bank of Cal.* v. *Iwasaki* (1968) 70 Cal.2d 81, 84, fn. 2 [73 Cal.Rptr. 564, 447 P.2d 956]; *McClure* v. *Donovan* (1949) 33 Cal.2d 717, 730-731 [207 P.2d 17].)

[9]In this case, we have no warrant to address the question whether section 66499.37 can be applied to bar a public entity from attacking one of its own decisions.

of the Commission's act of granting the second extension, we are unpersuaded.

Of course, the Map Act requires that a valid tentative map be in existence when a final map is approved. (See §§ 66452.6, subd. (d), 66457.) Nonetheless, we have no doubt that to permit the statute of limitations to run from final map approval, where a legal attack is made on a tentative map extension, would contravene policies underlying section 66499.37. We agree with *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873, that section 66499.37 manifests "a patent legislative objective that the validity of . . . decisions of a local legislative body, or its advisory agency, be judicially determined as expeditiously as is consistent with the requirements of due process of law." (86 Cal.App.3d at p. 886.)

Requiring attacks on tentative map extensions to be made expeditiously avoids waste of funds. As Justice Tobriner wrote for a unanimous Supreme Court in a slightly different context, "[T]he date when the tentative map comes before the governing body for approval is the crucial date when that body should decide whether to permit the proposed subdivision. Once the tentative map is approved, the developer often must expend substantial sums to comply with the conditions attached to that approval. These expenditures will result in the construction of improvements consistent with the proposed subdivision, but often inconsistent with alternative uses of the land." (*Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 655 [150 Cal.Rptr. 242, 586 P.2d 556].) It goes without saying that a decision *extending* a tentative map invokes the same policy concerns as a decision *approving* a tentative map: both decisions ordinarily result in the expenditure of funds and the construction of improvements by a developer.

Section 66499.37 sets forth a reasonable period of time in which an extension of a tentative map may be attacked, so that, upon expiration of the time set forth in the statute, development funds may be committed without fear of waste in reliance on extension of the tentative map. That goal of the statute would be frequently annihilated by a rule permitting legal defects in tentative map extensions to be resurrected and attacked following final map approval.

We believe developers are not the only people who stand to benefit from a rule requiring the expeditious litigation of extensions of tentative maps. Development costs are usually ultimately reflected in housing costs, so that those who buy homes pay at least a share of increased costs of development caused by tardy litigation of tentative map approvals or extensions.

In *Camp* v. *Board of Supervisors, supra,* 123 Cal.App.3d 334, the court implicitly recognized the principle that the illegality of a tentative map can-

not be challenged upon approval of a final map, if the statute of limitations has run from tentative map approval. There, the Court of Appeal upheld the trial court's conclusion that the general plan of the County of Mendocino failed to comply with requirements of state law (§ 65300 et seq.) in various respects. (Pp. 349-352.) The trial court had enjoined the county from approving any tentative or final maps until it adopted a valid general plan. (P. 358.) The Court of Appeal, however, limited the trial court's injunction so as to allow the county to approve final maps in situations where tentative map approval had not been challenged within the time set forth in section 66499.37. (P. 359.)[10]

We hold that, where an extension of a tentative map is challenged as unlawful, the statute of limitations in section 66499.37 begins to run at the time the extension is granted; the statute does not begin to run anew upon approval of a final map.

## C

In its memorandum of tentative decision, the trial court on its own[11] discovered what it perceived to be a problem more fundamental than the

---

[10]The courts have not hesitated to apply section 66499.37 so as to require litigants to file suits challenging subdivision decisions at the earliest reasonable opportunity.

For example, in *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873, the city imposed school impact fees as a condition of subdivision map approval. It is unclear whether the maps were tentative or final. Thereafter, the developer paid the fees and filed suit, contending the fees were illegal. The court held the period of limitation in section 66499.37 began to run from the date of map approval, not from the date fees were paid. (86 Cal.App.3d at p. 886.)

Similarly, in *Soderling* v. *City of Santa Monica, supra,* 142 Cal.App.3d 501, petitioner challenged the denial of final map approval by the city council. City ordinances empowered the planning commission to approve tentative maps upon appropriate conditions and the city council to approve final maps upon a showing that the conditions had been satisfied. (*Id.,* at p. 505.) Soderling obtained tentative map approval upon conditions but was unable to meet certain conditions during the life of the tentative map. He sought final map approval upon his offer to enter into a contract with the city promising to satisfy the conditions before sale of the subdivided property, with provision of security for his performance. (*Id.,* at p. 504.) The city council rejected Soderling's offer and denied approval of his final map. (*Ibid.*) Soderling appealed contending the council's decision was tantamount to the imposition of a new condition in the nature of a time limitation upon the prior conditions. The Court of Appeal held: "Clearly, petitioner's claim is not a challenge to the imposition of a 'new' condition, but is grounded solely on the validity of those conditions enumerated in the tentative map. Accordingly, it is indeed time-barred." (*Id.,* at p. 506.)

Recently, in *Kirk* v. *County of San Luis Obispo, supra,* 156 Cal.App.3d 453, landowners in 1979 sought a certificate of compliance (§ 66499.35) from the board of supervisors to confirm that a certain 12 acres of land constituted a separate legal parcel. The board denied the certificate but no suit was brought. The landowners sought an identical certificate in 1980, but the planning department refused to process it on the ground the board had determined the issue the year before. The court held the statute of limitations in section 66499.37 began running when the board denied the certificate in 1979, so that the landowners' suit was barred. (156 Cal.App.3d at pp. 460-461.)

[11]The trial court wrote: "This point of the illegality of this granting of both the first and the second extension of the Tentative Map by the wrong body was completely ignored by

*duration* of the second extension; the court concluded that Mono County Code did not authorize the Commission to grant tentative map extensions at all. The trial court correctly reasoned that, as used in Mono County Code section 17.20.120, "the governing body" meant the Board, not the Commission. (See, e.g., Mono County Code, §§ 17.12.080, 17.12.090, 17.12.120.) The trial court reasoned that the Map Act did not give the Commission authority to grant a tentative map extension. Consequently, the trial court concluded that both the 1980 and 1981 extensions granted by the Commission "were illegal and void at the time they were respectively granted."

We hold the extensions were authorized by the Map Act itself; the trial court's conclusion to the contrary was erroneous. Consequently, we need not confront the perplexing problem posed by the application of the statute of limitations to an act undertaken by a public agency wholly without legal authority.

Section 66452.6, subdivision (c) then provided in pertinent part: "Upon application of the subdivider filed prior to the expiration of the approved or conditionally approved tentative map, the time at which the map expires may be extended by the legislative body or by an advisory agency authorized to approve or conditionally approve tentative maps for a period or periods not exceeding a total of two years. . . ." (This subdivision was relettered subd. (e) and amended to provide for an extension period not to exceed three years by urgency legislation eff. June 11, 1982. (Stats. 1982, ch. 259, § 1.)) Section 66452.1, subdivision (b) empowered an "advisory agency"[12] to approve, conditionally approve, or disapprove a tentative map if the agency is "authorized by local ordinance." Mono County Code section 17.12.070 authorized the Commission to approve tentative maps. In our view, former section 66452.6, subdivision (c) reflected a clear legislative wish that local planning commissions, which were authorized to approve or conditionally approve tentative maps, were empowered to exercise their discretion to grant tentative map extensions of up to two years. The two extensions granted by the Commission, totaling two years, were therefore authorized by the Map Act itself.

Taking a cue from the trial court's decision, plaintiff now contends former section 66452.6, subdivision (c) is subject to the authority granted local agencies to adopt their own procedures for subdivision map approval, as set forth in section 66451: "The procedures set forth in this chapter shall gov-

---

counsel for both parties. No recognition of the point was made in any of the briefs or in oral argument."

[12]There is no dispute that the Commission was an "advisory agency" as defined in section 66415.

ern the processing, approval, conditional approval or disapproval and filing of tentative, final and parcel maps and the modification thereof. Local ordinances may modify such procedures to the extent authorized by this chapter." By plaintiff's view, Mono County Code section 17.20.020 granted exclusive authority to the Board to grant map extensions, and then for a maximum of one year. We believe plaintiff's position cannot be reconciled with the statutes.

Section 66451 provides in pertinent part, "Local ordinances may modify such procedures to the extent authorized by this chapter [chapter 3 of division 2 of title 7 (§§ 66451-66472)]." We construe this language in the context of the statutory framework as a whole. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) When we examine the provisions of chapter 3, describing procedures for approval of subdivision maps[13] (§§ 66451-66462.5), we find, time and again, that the Legislature has explicitly "authorized" situations in which the Map Act's procedures may be modified.[14] Thus, for example, section 66451.2 expressly authorizes a local agency to establish fees for the processing of maps. Section 66451.3 requires notice of public hearings by publication and "in such other manner as it may deem necessary or desirable, as provided by local ordinance." Section 66452 allows a tentative map to be filed with the clerk of the legislative body "or with such other officer or employee of the local agency as may be designated by local ordinance." And so forth. (See § 66452.5, subd. (a)) We believe that where the Legislature has intended that local ordinances may modify procedures in the Map Act related to the approval of subdivision maps, the Legislature has said so in no uncertain terms. With this overview, we turn to section 66452.6.

Subdivision (c) of section 66452.6 provided in pertinent part "the time at which such map expires may be extended by . . . an advisory agency authorized to approve . . . tentative maps for a period or periods not exceeding a total of two years." Unlike other provisions of the Map Act that explicitly "authorize" ordinances to modify subdivision map procedures, no such authority is found here. This absence of authority is particularly significant in light of the express authority for enactment of local ordinances found in subdivision (a) of the same statute, section 66452.6, which then provided

---

[13] Section 66463, related to *parcel* maps, provides in pertinent part, "Except as otherwise provided for in this code, the procedure for processing, approval, conditional approval, or disapproval and filing of parcel maps and modifications thereof shall be as provided by local ordinance." We have no occasion in this case to examine procedures related to a parcel map.

[14] Of course, if a local ordinance *supplements* procedures in the Map Act, and does not conflict with them, the local ordinance does not "modify" the Map Act. (See, e.g., *Mefford* v. *City of Tulare* (1951) 102 Cal.App.2d 919, 924-925 [228 P.2d 847].)

in relevant part, "An approved or conditionally approved tentative map shall expire 24 months after its [initial] approval or conditional approval, or after such additional period of time as may be prescribed by local ordinance, not to exceed an additional 12 months." (Stats. 1981, ch. 482, § 1, pp. 1825-1826.)

We conclude that the Legislature did not authorize local agencies to modify, by ordinance, the procedures for tentative map extensions set forth in former subdivision (c) of section 66452.6. The statute envisioned that if a local agency had empowered an advisory agency to approve subdivision maps, the advisory agency would be empowered by the Map Act itself to grant extensions of tentative maps for periods, in the discretion of the agency, not to exceed two years. A local agency cannot enact an ordinance that prescribes procedures that conflict with those established in the Map Act. (*Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 505 [113 Cal.Rptr. 539].) To the extent Mono County Code section 17.20.020 purported to divest the Commission of authority to grant a tentative map extension or purported to limit the maximum duration of an extension to one year, the ordinance attempted to modify the Map Act without statutory authority and was therefore unlawful and void.

## II

Even though the trial court found the map extensions granted by the Commission void, it further concluded, as we have, that "the second yearly extension by the Planning Commission became effective November 25, 1981 after 90 days without suit having been filed." However, the trial court reasoned: (a) the Commission rescinded its second extension on April 8, 1982; (b) Aspen Creek timely appealed to the Board; (c) the Board denied the appeal and concluded it was without jurisdiction to act on the final map on April 20, 1982; and (d) the Board's decisions of April 20, 1982, became final and binding on Aspen Creek when Aspen Creek failed to file a lawsuit within 90 days of April 20, 1982. Plaintiff, naturally, reiterates the argument on appeal.

■ For reasons that follow, we conclude the Board failed to act on the appeal of the Planning Commission's rescission of the second extension. Consequently, the tentative map extension was approved by operation of law.

■ We begin with the settled proposition that approval of a tentative subdivision map by a local agency is an *adjudicatory* administrative decision. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 614 [156 Cal.Rptr. 718, 596 P.2d 1134].) The reason the decision is adjudicatory in nature is

that it represents the application of general standards to specific parcels of real property; the decision is therefore determined by facts peculiar to the individual case. (*Ibid.*) It follows that decisions granting an extension of a tentative map, rescinding such an extension, or determining an appeal from the rescission of such an extension are also adjudicatory in nature: each decision is made upon the application of general standards of law to facts peculiar to the individual case.

 Because the Board's determination of the appeal was an adjudicatory administrative decision, it was required to make findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the Board's action. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12].) "As stated by the United States Supreme Court, the 'accepted ideal . . . is that "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." (*S.E.C.* v. *Chenery Corp.* (1943) 318 U.S. 80, 94.)' (2 Davis, [Administrative Law Treatise (1958)] § 16.01, pp. 435-436. See also *Saginaw Broadcasting Co.* v. *Federal C. Com'n* (1938) 96 F.2d 554, 559 [68 App.D.C. 282].)" (*Topanga Assn., supra,* 11 Cal.3d at p. 516.)

The findings made by the Board on April 20, 1982, (see fn. 5, *ante*) make no mention of the Commission's decision rescinding the tentative map. Indeed, they make no mention of the tentative map at all; rather, they are uniformly directed to why the Board refused Aspen Creek's concurrent request for final map approval. The Board's principal concern (as reflected in the transcript of the Board's discussion that day) was the Commission's telephone vote, taken earlier in the day, approving the final map in apparent violation of the Brown Act.[15] In any event, the Board's findings simply confirm what the transcript of the Board's discussion itself reveals: the Board did not adjudicate the question whether the Commission properly rescinded its tentative map extension.[16] In short, the Board did not act on

---

[15]Although not immediately relevant, the law is well settled that while a decision made in violation of the Ralph M. Brown Act (§ 54950 et seq.) may subject the decisionmakers to criminal liability, the decision is not void. (*Rowen* v. *Santa Clara Unified School Dist.* (1981) 121 Cal.App.3d 231, 236 [175 Cal.Rptr. 292]; *Greer* v. *Board of Education* (1975) 47 Cal.App.3d 98, 121-122 [121 Cal.Rptr. 542]; *Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 474 [85 Cal.Rptr. 924]; *Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 774 [7 Cal.Rptr. 805].)

[16]Peculiar procedural problems were raised by the Commission's rescission. One, for example, was whether Aspen Creek received adequate notice of the Commission's action (see *Horn* v. *County of Ventura, supra,* 24 Cal.3d at p. 617; *Kennedy* v. *City of Hayward* (1980) 105 Cal.App.3d 953, 962-963 [165 Cal.Rptr. 132]); the record available to us fails

Aspen Creek's appeal of the rescission of the tentative map by the Commission.

Aspen Creek's appeal was authorized by section 66452.5, subdivision (a), which provides in pertinent part, "The subdivider . . . may appeal from any action of the advisory agency with respect to a tentative map to . . . the legislative body. . . . [¶] . . . Within 10 days following the conclusion of the hearing, the . . . legislative body shall render its decision on the appeal."[17]

■ Section 66452.5, subdivision (c) provides in pertinent part, "If the legislative body fails to act upon an appeal within the time limit specified in this chapter, the tentative map, insofar as it complies with applicable requirements of this division and local ordinance, shall be deemed to be approved or conditionally approved as last approved or conditionally approved, and it shall be the duty of the clerk of the legislative body to certify such approval." Section 66452.5, subdivision (c), explicitly states only that a tentative map shall be "deemed to be approved" in the event that legislative body fails to act on an appeal within the prescribed time. The statute does not say what should happen when a subdivider appeals from an adverse decision regarding a tentative map *extension* and the legislative body fails to act on the appeal in time. However, in those circumstances, we believe the language must be construed to mean that a tentative map shall be "deemed to be extended."

Appeals from denials of tentative map extensions are expressly authorized by section 66452.6, subdivision (e). (See fn. 17, *ante*.) Interestingly, under section 66452.5, subdivision (c), a tentative map may be "deemed to be approved" only "as last approved or conditionally approved." In short, the statute contemplates that the tentative map has been previously approved and that the decision appealed from is one affecting the map *after* initial approval. Extension of a tentative map is a common decision made after initial approval. It would therefore be odd for the statute to provide no sanction for failure to act on an appeal from a map extension.

Moreover, whatever is necessarily implied in a statute is as much a part of it as that which is expressed. (*Welfare Rights Organization* v. *Crisan*

---

to show that any notice was given. Another formidable problem was whether the Commission had the power to "rescind" its prior decision at all. (See *Heap* v. *City of Los Angeles* (1936) 6 Cal.2d 405, 407-408 [57 P.2d 1323]; 59 Ops.Cal.Atty.Gen. 123 (1976); Annot., Power of Administrative Agency to Reopen and Reconsider Final Decision as Affected by Lack of Specific Statutory Authority (1960) 73 A.L.R.2d 939; cf. *Aylward* v. *State Board etc. Examiners* (1948) 31 Cal.2d 833, 838-839 [192 P.2d 929].)

[17]Section 66452.6, subdivision (e) also provides in pertinent part, "If the advisory agency denies a subdivider's application for extension, the subdivider may appeal to the legislative body within 15 days after the advisory agency has denied the extension."

(1983) 33 Cal.3d 766, 771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214], and authorities cited therein.) The "deemed" extension of the tentative map is necessarily implied from the language of the statute. If a subdivider appeals from denial of a tentative map extension, and if the appeal is not acted upon in the prescribed time, the statute says the map shall be deemed "approved" provided it complies with the Map Act and local ordinance. However, the map cannot be approved unless it exists. Approval therefore necessarily implies an extension of the map.

Finally, the evident legislative policy of section 66452.5, subdivision (c) requires that a tentative map be "deemed extended" when an appeal involving a map extension is not timely acted upon. This statute—like the 90-day statute of limitations discussed earlier—plainly reflects the Legislature's desire that decisions involving subdivision approvals be made expeditiously. The concern undoubtedly reflects the Legislature's awareness of the substantial costs of development and of the effects of delay on those costs. The statute provides for automatic map approval in the circumstances prescribed, thereby allowing the developer to proceed if an appeal is not timely adjudicated. These policies are reinforced by recognizing that a tentative map is "deemed extended" when a subdivider appeals from a decision denying or, in this case, rescinding an extension.

As noted, section 66452.5, subdivision (c) provides for automatic map approval only insofar as the map in question complies with the Map Act and local ordinance. It is undisputed that the tentative map in question here complied with the Map Act and with all local ordinances regulating the map itself. The only asserted ground of illegality of the map was that its extension by the Commission violated Mono County Code. As we have seen, however, plaintiff is prohibited by section 66499.37 from attacking the map extensions in this action. Moreover, as we have noted, the provisions of the local ordinance allegedly violated were unlawful under the Map Act. The tentative map therefore complied with the Map Act and all valid local ordinances. Consequently, when the Board failed to decide Aspen Creek's appeal within 10 days of the hearing on April 20, 1982, as required by section 66452.5, subdivision (a), the tentative map was deemed approved and extended for the duration of the extension granted by the Commission on August 27, 1981, i.e., the tentative map was extended until August 27, 1982.

On June 24, 1982, the Commission approved Aspen Creek's final map. On July 6, 1982, the Board approved the final map. These approvals both occurred during the extension of the tentative map granted by section 66452.5, subdivision (c) and were therefore lawful. The trial court erred in concluding to the contrary.

Finally, we believe the equities of the present case demand the result we reach.

At the time this litigation was filed, all affected public agencies in Mono County clearly favored build-out of the subdivision in accordance with final map approval. Indeed by its "ratification" and findings made on June 22, 1982, the Board did everything but jump through hoops to demonstrate on the record it was in favor of allowing the subdivision to go forward.

This is obviously not a case involving allegations of environmental harm or the failure of a developer to comply with conditions in a tentative map. Rather, as we see it, the central issue is whether an otherwise lawful subdivision should be blocked (and substantial funds wasted) because of alleged technical legal defects in the process of map approval. We perceive no reason why, in this instance at least, the law must waltz blithely through distant elysian fields, too far from the real dance of life.

### DISPOSITION

The judgment rendered April 20, 1983, is reversed.

Regan, Acting P. J., and Carr, J., concurred.