[No. E005698. Fourth Dist., Div. Two. Nov. 13, 1989.]

STEPHEN R. SELINGER, Plaintiff and Respondent, v.
CITY COUNCIL OF THE CITY OF REDLANDS et al.,
Defendants and Appellants.

**COUNSEL**

Best, Best & Krieger, Meredith A. Jury, Daniel J. McHugh and James E. Neuerburg for Defendants and Appellants.

Freilich, Stone, Leitner & Carlisle and Katherine E. Stone as Amici Curiae on behalf of Defendants and Appellants.

Cox, Castle & Nicholson and Kenneth B. Bley for Plaintiff and Respondent.

**OPINION**

**DABNEY, J.**—The City Council of the City of Redlands (City) and its individual members (collectively, City Council) appeal from an order of the trial court granting the petition of Stephen R. Selinger (Selinger) for a writ of mandate. The writ requires the City Council to acknowledge that Selinger's tentative tract map was deemed approved because the City Council failed to act on the application within one year after the application was complete. The writ further requires the City Council to complete administrative processing of Selinger's development project under the ordinances, policies and standards in effect when Selinger's application was found complete. The City Council contends that: (1) the automatic approval provisions of the Permit Streamlining Act are unconstitutional and conflict with other planning laws; (2) the City Council's adoption and extension of an urgency moratorium ordinance tolled the one-year period for approving or disapproving a development project under the Permit Streamlining Act; and (3) Selinger did not have a vested right to develop his subdivision.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. Selinger is the purchaser of a parcel of approximately 260 acres which was annexed to the City in December 1985. On December 3, 1985, following a public hearing, the City Council zoned the parcel "R-A," which called for a minimum lot size of 20,000 square feet.

In April 1986, Selinger filed an application to develop the parcel as a residential subdivision, designated as tentative tract No. 13294 (the project). The proposed project conformed with existing zoning requirements. On May 12, 1986, the City informed Selinger that his application for the project was complete. On May 19, 1986, the City's environmental review committee determined that an environmental impact report (EIR) should be prepared. Selinger deposited $500 to fund preliminary investigative work for the EIR, and on October 6, 1986, Selinger deposited $17,100 for the cost of preparing the EIR. However, the City Council did not execute a contract with an independent consultant to prepare the EIR until January 12, 1987.

Meanwhile, on May 20, 1986, the City Council was informed that two major residential subdivision projects were already proposed for the same area (the southeast area) as Selinger's project. The southeast area consists of approximately 2,266 acres of mostly vacant land with a few scattered residences. The southeast area is adjacent to other areas in which significant growth over the next few years has been planned. The City's staff identified potential adverse effects from development of the southeast area, including lack of a master drainage and sewer collection system, inadequate water pressure, and inadequate streets and highways.

On June 3, 1986, the City Council adopted ordinance No. 1959 as an urgency measure. Ordinance No. 1959 was an interim zoning ordinance which restricted all development approvals in the southeast area for 45 days. Concurrently, the City Council directed its staff to prepare a proposed general plan amendment for the southeast area. The City Council later voted to extend ordinance No. 1959 through June 3, 1987 and again through June 2, 1988.

By letters dated May 26, 1987, and June 12, 1987, Selinger informed the ·City Council that the one-year period within which it was required to act on his application had passed, and the application was deemed approved by operation of law. (Gov. Code, §§ 65950, 65956.)[1] Following a meeting of the City Council at which Selinger appeared and made a presentation, the City Council denied Selinger's request that his application be deemed approved.

On December 15, 1987, the City Council adopted a general plan amendment which requires all new development in the southeast area to conform to specified zoning, density and other land use standards. The new zoning reduced the allowable density of the project from 304 residential lots to 120. The same day, the City Council repealed ordinance No. 1959.

---

[1] All statutory references are to the Government Code unless otherwise indicated.

Meanwhile, in September 1987, Selinger filed a petition for writ of mandate. Following a hearing, the trial court ordered a writ of mandate to be issued requiring the City Council to deem Selinger's tentative tract map No. 13294 approved by operation of law and to process the project under the ordinances, policies and standards in effect as of May 12, 1986.[2]

### PERTINENT STATUTORY PROVISIONS

*The Permit Streamlining Act.* In 1977 the Legislature adopted Assembly Bill No. 884 which added chapter 4.5 to division 1 of title 7 of the Government Code, commencing with section 65920. These code provisions are colloquially referred to as the Permit Streamlining Act.

The purpose of the Permit Streamlining Act is set forth in section 65921: "The Legislature finds and declares that there is a statewide need to ensure clear understanding of the specific requirements which must be met in connection with the approval of development projects and to expedite decisions on such projects. Consequently, the provisions of this chapter shall be applicable to all public agencies, including charter cities."

Section 65927 defines "development" to include a subdivision. Section 65928 defines "development project" as any project undertaken for the purposes of development. Section 65929 defines the "lead agency" as the public agency having the principal responsibility for carrying out or approving the project.

Section 65950 requires the lead agency to approve or disapprove the project within a specified time after the application is accepted as complete. If, as here, an environmental impact report is prepared under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), the applicable period is one year, subject to extension on the project proponent's request.

Section 65956, subdivision (b), as it read when Selinger submitted his application for the project, stated: "In the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, failure to act shall be deemed approval of the development project."[3]

---

[2] Redlands has asked us to take judicial notice of various documents which purport to show Redlands' actions on the application after the moratorium expired. Redlands' request is denied.

[3] In 1987, in tacit recognition of the due process problems inherent in the deemed approval provisions, the Legislature amended section 65956 to include a requirement of notice to the public and a hearing; section 65956, subdivision (b) now states that a development project

Section 65961 bars a city from imposing new conditions on the issuance of building permits for five years when those conditions could have been imposed when the subdivision map was approved.

The Permit Streamlining Act, as it read when Selinger filed his application, made no accommodation for the interests of persons other than the applicant.[4] Likewise, the statutory scheme is silent as to whether automatic approval can occur despite noncompliance with an applicable general plan, zoning, the Subdivision Map Act (§ 66410 et seq.) or CEQA. Finally, the statutory scheme is silent as to whether a local moratorium on development tolls the time limitations of the Permit Streamlining Act.

*Other Relevant Statutes.* Section 66474.2 requires that a subdivision map be approved or disapproved based only on ". . . those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete . . . ." However, if before it has received the complete application, the local agency has taken formal steps, including publishing notice, to amend its planning laws, "the local agency may apply any ordinances, policies, or standards enacted or instituted as a result of those proceedings which are in effect on the date the local agency approves or disapproves the tentative map. . . ."

Section 65858, which allows a city to impose a development moratorium, states: "Without following the procedures otherwise required preliminary to the adoption of a zoning ordinance, the legislative body, to protect the public safety, health and welfare, may adopt as an urgency measure an interim ordinance prohibiting any uses which may be in conflict with a contemplated general plan, specific plan, or zoning proposal which the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time." The local legislative body may extend an interim zoning ordinance up to a total of two years by a "four-fifths vote of the legislative body" at a noticed public hearing. (*Ibid.*)

Section 65589.5 prohibits the denial or reduction in density of a residential development project which complies with applicable planning and zoning laws in effect when the application for the project is determined to be complete unless substantial evidence in the record demonstrates that

---

may be deemed approved after the specified time periods "only if the public notice required by law has occurred." The amendments permit the applicant either to bring an action for a writ of mandate to compel the public agency to provide the notice and hearing or allow the applicant to provide such notice himself. (§ 65956, subds. (a), (b).)

[4] Former section 65956, subdivision (a) permitted, but did not require, an applicant to obtain a writ of mandate ordering a public agency to hold a timely hearing on a project.

approval of the application as submitted "would have a specific, adverse impact upon the public health or safety," and if there is no "feasible" method to mitigate or avoid the adverse impact.

## DISCUSSION

*Standard of Review.* In this appeal, we are called upon to reconcile apparent conflicts between several statutes which regulate development;[5] the facts are undisputed. ■ Questions of statutory interpretation are pure matters of law on which an appellate court may exercise its independent judgment to discern the intent of the Legislature. (*Jones* v. *Pierce* (1988) 199 Cal.App.3d 736, 741 [245 Cal.Rptr. 149.)

*Effect of Local Moratorium on Permit Streamlining Act Deadlines.* The City Council adopted ordinance No. 1959 under section 65858 as an urgency measure to prohibit land uses possibly in conflict with a proposed general plan amendment. The City Council maintains that the development moratorium tolled the time limits of section 65950. This is an issue of first impression in this state.[6]

In support of its position, the City Council relies, by analogy, on section 66463.5, subdivision (d)(1), which, while a development moratorium is in place, extends the time within which a developer must obtain approval for a final map before his tentative map expires. Section 66463.5 does not support the City Council's position. If anything, it indicates that if the Legislature intends for a moratorium to toll statutory deadlines, it knows how to do so explicitly.

The City also cites *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334 [176 Cal.Rptr. 620] and *Leavenworth Properties* v. *City and County of San Francisco* (1987) 189 Cal.App.3d 986 [234 Cal.Rptr. 598], as authority for its position that a moratorium tolls the Permit Streamlining Act deadlines. Both cases are distinguishable. First, both cases were decided on the

---

[5] As one commentator has cogently observed, "Laid almost haphazardly upon a heap of existing rules, the changes [of the Permit Streamlining Act] set up a chain reaction of statutory conflicts that continues today." (Wilson, *Down Stream from Streamlining* (Aug. 1987) Cal.Law. at pp. 67, 68.)

[6] The parties have extensively briefed the issue whether the moratorium was validly extended by a unanimous vote of the three council members present at the June 2, 1987 City Council meeting. We need not resolve this issue. If the moratorium did not toll the one-year deadline for acting on development applications, any extension of the moratorium is irrelevant. If the moratorium, as extended by the City Council by a unanimous vote of its five members on July 15, 1986, did toll the one-year period, the City acted on Selinger's application in a timely manner by denying the application on April 19, 1988 (see fn. 2, *ante*), regardless of whether the additional extension was valid.

basis of automatic approval provisions of the Subdivision Map Act (§§ 66452.1, subd. (b), 66452.2, 66452.4). These provisions require an agency to act on an application for a subdivision map within 50 days only if the agency "is *authorized by local ordinance*" to act on the application. (§ 66452.1, subd. (b), italics added.) The Permit Streamlining Act includes no such qualifying language. Moreover, in *Camp,* the court declared the Mendocino County general plan legally insufficient and enjoined the county from approving any subdivision applications already on file. The *Camp* court rejected the county's argument that enjoining the approval of pending applications would trigger approval by operation of law under Government Code section 65950. The court reasoned: "The cited statutes would have that effect [automatic approval] only if the County or its affected agencies were *authorized by law* to take action approving, conditionally approving, or disapproving the applications involved. . . . We have seen that they are not authorized to take such actions because—and for as long as—the County does not have a valid general plan." (*Camp, supra,* 123 Cal.App.3d at p. 360, original italics.) Here, the City's power to act on development applications was suspended by the City's voluntary action, not by operation of law because of failure to adopt an adequate general plan.

The court in *Leavenworth* applied the *Camp* rule in holding that a subdivision map application could not be approved by operation of law under section 66452.4 when the application was inconsistent with a local ordinance. However, in *Leavenworth* the city refused to accept an application for filing when the application was submitted during the moratorium period. Thus, with no application on file, the time periods under the Permit Streamlining Act never began. (*Leavenworth, supra,* 189 Cal.3d at p. 995.)

Selinger argues that the interim ordinance had no effect on time limitations under the Permit Streamlining Act. He contends that if we hold that a moratorium under section 65858 tolls the one-year statutory deadline, section 66474.2 would be nullified. Section 66474.2 requires a city to process an application for subdivision approval under the standards in existence when the application was completed, unless the agency had formally initiated proceedings to amend its development ordinances before the application was completed. Because the City Council may not apply changes in planning or zoning which take place after an application for a tentative map is complete, Selinger argues that the Legislature could not have intended for a moratorium to apply to a pending application for a tentative map.

■ Selinger apparently relies on the rule of statutory construction that ". . . the latest legislative expression will be held controlling when there are conflicting statutory provisions, . . ." (*City of Petaluma* v. *Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284, 288 [282 P.2d 43]; *In re Duncan* (1987) 189

Cal.App.3d 1348, 1364-1365, fn. 11 [234 Cal.Rptr. 877].) Under this rule, the later enactment is deemed to effect a repeal or at least a partial repeal of an earlier inconsistent statute.

■ Section 65858, which allows imposition of a moratorium without prior notice or a hearing, was enacted in 1965 (Stats. 1965, ch. 1880, § 6). Section 65956, which provides for approval of an application by operation of law, was enacted in 1977 (Stats. 1977, ch. 1200, § 1). Section 66474.2, which requires approval of a subdivision using the "ordinances, policies and standards" in effect at the time and application for a subdivision is determined to be complete, was enacted in 1982 (Stats. 1982, ch. 1449, § 2). The Legislature is presumed to be aware of prior laws when enacting new statutes.

". . . Whenever possible, . . . we must reconcile statutes and seek to avoid interpretations which would require us to ignore one statute or the other [citation], and the rule giving precedence to the later statute is invoked only if the two cannot be harmonized. [Citation.]" (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].)

Here, the conflict between sections 65858 and 65956 is unavoidable. The statutory provision allowing a city to impose a development moratorium cannot be reconciled with another statute which requires the city to act on an application within one year. We conclude that a moratorium, enacted after an application is complete, does not toll the time period for action on the application under section 65956.

*Does the Deemed Approval Provision of the Permit Streamlining Act Conflict With the Subdivision Map Act?* The City next argues that approval by operation of law undermines the Subdivision Map Act. The Subdivision Map Act establishes general statewide criteria for land development planning and enables cities and counties to regulate the details of subdivisions. ■ The purpose of the Subdivision Map Act is: ". . . to coordinate planning with the community pattern laid out by local authorities, and to assure proper improvements are made so the area does not become an undue burden on the taxpayer. [Citation.]" (*Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1011 [164 Cal.Rptr. 776].)

■ Under section 66474, a city *must* deny a subdivision map application unless the city makes specified findings. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 856] [express finding of consistency with applicable general plan is prerequisite for approval of a tentative map]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12]

[adjudicatory decisions must be supported by findings, and the findings must be supported by substantial evidence].)

Again, we are faced with an insoluble conflict in the provisions of two statutory schemes. The City's duty to make findings under section 66474 cannot be reconciled with the automatic approval provisions of the Permit Streamlining Act. Courts of other states have ruled that approval by operation of law occurs even if the local agency could have turned down the application if it had done so in a timely fashion. (See, e.g., *DiStefano* v. *Miller* (1986) 116 App.Div.2d 575 [ 497 N.Y.S.2d 432, 433]; *Savage* v. *Town of Rye* (1980) 120 N.H. 409 [415 A.2d 873, 875]; see also *In re Fish* (1988) 150 Vt. 462 [554 A.2d 256, 258] ["Because the application of the statute can result in granting of permits that are wholly inconsistent with the zoning regulations of a municipality to the detriment of surrounding landowners, we must be careful to use it only where its application is clearly consistent with statutory intent."].) California's statutory scheme leads to the same result.

Having concluded that both of the City's statutory challenges fail, we must consider the City Council's constitutional challenge.

*City's Standing to Assert Right of Its Citizens to Notice.* The City Council argues that the Permit Streamlining Act is defective because it fails to safeguard the constitutional rights of adjacent landowners to notice and a hearing before they are deprived of substantial property rights. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605 [156 Cal.Rptr. 718, 596 P.2d 1134].) Before we discuss the merits of this issue, we must address Selinger's challenge to the City Council's standing to assert local citizens' rights.

Selinger argues that the City Council has no standing because its own rights are unaffected, citing *Star-Kist Foods, Inc.* v. *County of Los Angeles* (1986) 42 Cal.3d 1, 6 [227 Cal.Rptr. 391, 719 P.2d 987]. ■ As a general rule, before a court will reach a constitutional issue, a proper plaintiff must present it. (*Warth* v. *Seldin* (1975) 422 U.S. 490, 499 [45 L.Ed.2d 343, 354-355, 95 S.Ct. 2197]; *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 797 [166 Cal.Rptr. 844, 614 P.2d 276] [member of an administrative agency has no standing to challenge the agency's actions].)

In *Singleton* v. *Wulff* (1976) 428 U.S. 106 [49 L.Ed.2d 826, 96 S.Ct. 2868], the court clarified the scope of the rule: "Like any general rule, . . . this one should not be applied where its underlying justifications are absent. With this in mind, the Court has looked primarily to two factual elements to determine whether the rule should apply in a particular case. The first is the relationship of the litigant to the person whose right he seeks to assert.

If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter. . . .

"The other factual element to which the Court has looked is the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by the default the right's best available proponent." (428 U.S. at pp. 114-116 [49 L.Ed.2d at pp. 833-834].)

In *Drum* v. *Fresno County Dept. of Public Works* (1983) 144 Cal.App.3d 777, 781 [192 Cal.Rptr. 782], the court allowed the county to raise the failure to provide adequate notice as the basis for revoking a variance. Responding to a challenge that the landowners themselves, rather than the local entity, must raise the issue, the court declared: "It would serve no legitimate interest to hold that [the county] may not invoke lack of notice to its citizens in order to enjoin construction of respondents' building. Surely it should be able to invoke its own requirements of notice in order to preserve the public interest in preserving community patterns established by zoning laws." (*Id.* at pp. 784-785.)

■ We conclude, as did the court in *Drum,* that under the *Singleton* test, the City Council is a proper plaintiff. Local citizens' rights are inextricably bound up with the City's duty to review and condition subdivision approvals to assure appropriate land uses and prevent overburdening of local services.

More important, however, are the "genuine obstacles" to local citizens' ability to raise their own rights. All legal challenges to decisions approving tentative maps must be brought within 90 days or they will be barred by the statute of limitations set forth in section 66499.37. (*Griffis* v.*County of Mono* (1985) 163 Cal.App.3d 414, 421 [209 Cal.Rptr. 519].) Without prior notice, affected property owners are unable to learn until after the fact that their rights have been jeopardized. (See., e.g., *Horn, supra,* 24 Cal.3d 605 [affected landowner learned of impending construction only by accident].)

Selinger attempts to distinguish *Drum* on the ground that in *Drum* property owners had complained to the county before the county acted to enjoin

construction. We see no legal significance in that fact. Without notice of pending action, no property owners may be able to complain. We find that the City Council has standing to raise the constitutional challenge.

■ The City Council's standing to raise this issue is further supported by the analogous principle that the government generally cannot be estopped by the conduct of its individual officers where to do so would contravene an important public policy. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].) The rationale for this rule is that local citizens should not suffer because government officials neglect their duty. Here, likewise, the City's failure to provide notice and a hearing should not destroy local citizens' rights to procedural due process.

*Ripeness of Controversy.* Selinger contends that this case does not present a controversy "ripe" for judicial determination. Selinger argues that unless a property owner whose property rights are significantly affected is a party, the constitutionality of the Permit Streamlining Act is not justiciable.

■ The requirement of ripeness prevents courts from issuing purely advisory opinions. "[T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. On the other hand, the requirement should not prevent courts from resolving concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question. [Citations.]" (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].)

Stated another way, "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].) ■ Here, an actual controversy exists between Selinger and the City in the lawsuit initiated by Selinger. The case squarely presents the issue whether Selinger's permit may be deemed approved by operation of law even though Selinger concedes no notice or hearing was provided. We conclude the matter is ripe for judicial determination.

*Procedural Due Process Rights of Neighboring Landowners.* The City argues that affected landowners have a constitutional right to due process relating to adjudicatory decisions of the City. ■ We start our analysis keeping in mind that a statute is presumed to be constitutional; unconstitu-

tionality must be clearly shown, and doubts are to be resolved in favor of its validity. (*Santa Catalina Island Conservancy* v. *County of Los Angeles* (1981) 126 Cal.App.3d 221, 228 [178 Cal.Rptr. 708].)

In *Horn, supra,* 24 Cal.3d 605, the court considered a similar constitutional challenge. A property owner sought a writ of mandate to set aside the county's approval of a proposed subdivision near the petitioner's property. The petition alleged that various aspects of the proposed subdivision would detrimentally affect petitioner's property; petitioner was not given notice of the proceedings before the county approved the subdivision. The Supreme Court held that procedural due process requires that in adjudicatory land use decisions, including subdivision approvals, reasonable notice and an opportunity to be heard must be afforded to adjacent landowners before they are deprived of a significant property interest.

In *Horn,* the defendant county and real party in interest developer "urged that the Subdivision Map Act itself cannot contemplate notice and hearing procedures even as to larger subdivisions, because the act provides for automatic approval of a tentative map if the local entity does not act within a specified period after the application for approval is filed. (Gov. Code, § 66452.4.)"[7] (24 Cal.3d at p. 616.) The court rejected this position, announcing: "*It is a sufficient response to note that the due process requirements discussed herein are not rooted in statute but are compelled by the stronger forces of constitutional principle.*" (*Ibid.,* italics added; see also *Plaggmier* v. *City of San Jose* (1980) 101 Cal.App.3d 842, 854 [161 Cal.Rptr. 886] [failure of city to give notice to neighboring property owners invalidated city's action].)

Despite this strong language in *Horn,* the court in *Palmer* v. *City of Ojai* (1986) 178 Cal.App.3d 280 [223 Cal.Rptr. 542] ruled that the automatic approval sections of the Permit Streamlining Act were constitutional. In *Palmer,* the petitioner sought a writ of mandate to compel the city to issue permits for a shopping center, alleging that the time limits mandated by the Permit Streamlining Act had not been complied with. The *Palmer* court dismissed *Horn* with little discussion: "The fact that the Legislature did not see fit to address the problem presented in *Horn* has, in our view, no fatal effect on the [Permit Streamlining Act] whatsoever. The trial court's determination that the absence of time provisions relating to *Horn* rendered the

---

[7] The Subdivision Map Act contains its own provisions for deemed approvals, which antedate the Permit Streamlining Act. Section 66452.4, as it read when Selinger's application was filed, stated: "If no action is taken upon a tentative map by an advisory agency which is authorized by local ordinance to approve, conditionally approve or disapprove the tentative map or by the legislative body within the time limits specified in this chapter or any authorized extension thereof, the tentative map as filed, shall be deemed to be approved, insofar as it complies with other applicable requirements of this division and local ordinance, and it shall be the duty of the clerk of the legislative body to certify such approval."

Statutory Scheme unconstitutional appears to be based on misconception of who it is that owes the duty of notice and hearing to interested neighbors of a development project. As *Horn* itself makes clear, it is not the developer-applicant who has the duty; it is the public agencies themselves, including City." (*Id.,* at p. 291.) The *Palmer* court concluded, "In the matter before us, City's failure to follow *Horn* may *not* be used by City to invalidate legislative enactments not in any way inconsistent with the procedural due process considerations involved in *Horn*." (*Id.,* at p. 292, original italics.)

The *Palmer* court relied heavily on its perception that the failure to provide notice was the fault of the local government. The *Palmer* court apparently overlooked the *Horn* court's discussion of automatic approval provisions which appear in the Subdivision Map Act: "[T]he due process requirements discussed herein are not rooted in statute but are compelled by the stronger force of constitutional principle." (*Horn, supra,* 24 Cal.3d at p. 616.)

As in *Horn,* automatic approval of Selinger's tentative tract map could lead to substantial deprivation of property of neighboring landowners. The California Supreme Court held in *Horn* that approval of tentative subdivision maps is unconstitutional unless adequate notice and a hearing are provided. We see no way to reconcile *Palmer* with the *Horn* decision. We are duty bound to follow *Horn*; thus, we conclude that the Permit Streamlining Act was unconstitutional insofar as it led to approval of applications for development without provision for notice and a hearing to affected landowners.[8]

DISPOSITION

The judgment is reversed.

McDaniel, Acting P. J., and Hollenhorst, J., concurred.

A petition for a rehearing was denied December 1, 1989, and respondent's petition for review by the Supreme Court was denied January 25, 1990.

---

[8] The recent amendments to the Permit Streamlining Act (see fn. 3, *ante*) resolve the constitutional issue for all current applications for development.