[No. B050978. Second Dist., Div. Seven. Oct. 8, 1991.]

CALIFORNIA AUTOMOBILE ASSIGNED RISK PLAN, Plaintiff and Respondent, v.
JOHN GARAMENDI, as Insurance Commissioner, etc., Defendant and Appellant.

## Counsel

Strumwasser & Woocher, Fredric D. Woocher and Michael J. Strumwasser for Defendant and Appellant.

LeBoeuf, Lamb, Leiby & MacRae, James R. Woods, Sanford Kingsley and Thomas E. McDonald for Plaintiff and Respondent.

## Opinion

LILLIE, P. J.—The Insurance Commissioner of the State of California (Commissioner) appeals from a judgment granting the petition of California Automobile Assigned Risk Plan (CAARP) for peremptory writ of mandate. The judgment ordered the Commissioner to cancel hearings noticed for CAARP's March 2, 1990, commercial automobile rate increase application and CAARP's April 10, 1990, private passenger automobile rate increase application, and ordered the Commissioner to issue within 10 days revised

notices scheduling hearings on the applications in compliance with Insurance Code section 1861.08. The sole appellate issue is whether the superior court correctly ruled that Insurance Code section 1861.08, established by Proposition 103, applies to hearings to set rates for automobile policies issued under the assigned risk plan.

## FACTUAL AND PROCEDURAL BACKGROUND

According to verified petition for peremptory writ of mandate, CAARP is a nonprofit association created by statute to provide automobile liability insurance coverage for California drivers who are unable to obtain such coverage by ordinary methods (Ins. Code, §§ 11620, 11623); on March 2, 1990, the CAARP governing committee submitted to the Commissioner an application to increase rates for commercial automobile lines by a statewide average of 123.7 percent; on April 10, 1990, the CAARP governing committee submitted an application to increase rates for the private automobile line by a statewide average of 160.5 percent; in May 1990, the Department of Insurance sent CAARP notices of hearing on the two applications; the notices of hearing did not provide for adjudicatory hearings pursuant to the provisions of Insurance Code section 1861.08.

CAARP filed petition for peremptory writ of mandate and complaint for injunctive relief alleging that by failing to notice a public adjudicatory hearing on the March 2 and April 10 applications, the Commissioner has failed to comply with Insurance Code section 1861.08 and has failed to perform a clear and present ministerial duty. After hearing on June 13, 1990, the court granted CAARP's petition, ordered the Commissioner to cancel the hearings noticed for the March 2 and April 10 applications, and ordered the Commissioner to issue within 10 days revised notices scheduling hearings on the applications in full compliance with Insurance Code section 1861.08.[1] Commissioner filed notice of appeal from the judgment.

---

[1] Judge Janavs found "very persuasive" the Commissioner's argument that Insurance Code section 1861.08 does not apply to CAARP policies; however, the court noted that the same issue had been determined against the Commissioner by another trial court in a December 19, 1989, judgment, which case was then pending on appeal. Judge Janavs acknowledged that because the prior judgment was on appeal, the doctrine of res judicata did not apply, but "we do have another doctrine of issue preclusion," and "it seems to me that this court, as a matter of comity, which is a discretionary matter, should not permit retrial of an identical issue which has been previously tried." For reasons of issue preclusion and comity, Judge Janavs found

I

STANDARD OF REVIEW AND PRINCIPLES OF
STATUTORY CONSTRUCTION

The issue on appeal, whether the hearing procedures set out in Insurance Code section 1861.08 apply to hearings to set rates for automobile insurance policies issued under the assigned risk plan, is a matter of law upon which we may exercise our independent judgment. (*Wright* v. *City of Santa Clara* (1989) 213 Cal.App.3d 1503, 1505 [262 Cal.Rptr. 395].)

We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) To determine intent, we turn first to the words themselves; if the language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the intent of the legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters). (*Ibid.*)

An initiative measure is subject to the ordinary rules and canons of statutory construction. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1212 [246 Cal.Rptr. 629, 753 P.2d 585].) Accordingly, it should be construed with reference to the entire statutory system of which it forms a part, in such a way that harmony may be achieved among the parts. (See *Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 348 [250 Cal.Rptr. 268, 758 P.2d 596].) Inasmuch as it has been recognized that a wide variety of factors may illuminate the legislative design, including "context, the object in view, the evils to be remedied, the history of the time and of legislation upon the

---

that "I have to accept that 1861.08 is applicable to CAARP until the court of appeal tells me otherwise."

During the pendency of the instant appeal, the appeal from the December 19, 1989, judgment was decided in a published opinion by Division Four of the Second District Court of Appeal. (*California Automobile Assigned Risk Plan* v. *Garamendi* (1991) 232 Cal.App.3d 904 [283 Cal.Rptr. 562].) Division Four held that Insurance Code section 1861.08 does not apply to hearings to establish the uniform rate for policies issued under CAARP. (At the time of writing this opinion, Division Four's opinion is not final; a petition for rehearing having been filed.

No opposition having been filed to respondent's request for judicial notice of certain documents pertaining to hearings before the Insurance Commissioner, we take such notice; however, respondent does not appear to rely upon such documents as pertinent to the issue presented on appeal. Commissioner filed notice of appeal from the judgment.

same subject, public policy, and contemporaneous construction," (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443]; internal quotation marks omitted), we briefly set out the pertinent portions of the statutory and regulatory scheme pertaining to CAARP which were in existence prior to the passage of Proposition 103.

II

### Statutory Provisions of CAARP

CAARP was created in 1947. The plan consists of "the rules and regulations contained in this article [article 8 of title 10, California Code of Regulations] and is approved and issued by the Insurance Commissioner pursuant to Article 4, Chapter 1, Part 3, Division 2 of the Insurance Code." (Cal. Code Regs., tit. 10, § 2400.) CAARP has been described as follows: "In California, in addition to the regular and customary sources for the purchase of insurance coverage which most are familiar with, drivers may be insured through the California Automobile Assigned Risk Plan (CAARP). (Ins. Code, § 11620 et seq.) By statute this plan is available to any driver otherwise entitled to insurance but who has been unable in good faith to obtain it within the past 60 days. [Citations; footnote omitted.] All insurers are required to participate in the program." (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1222-1223 [240 Cal.Rptr. 829, 743 P.2d 889].)

"The commissioner, after a public hearing, shall approve or issue a reasonable plan . . . ." (Ins. Code, § 11620.) Section 11624 of the Insurance Code provides in pertinent part that "The plan shall contain: [¶] (a) Standards for determining eligibility of applicants for insurance . . . . [¶] (b) Procedures for making application for insurance, for apportionment of eligible applicants among the subscribing insurers, and for appeal to the commissioner by persons who believe themselves aggrieved by the operation of the plan. [¶] (d) Rules and regulations governing the administration and operation of the plan. [¶] (e) Provisions showing the basis upon which premium charges shall be made, and the manner of payment thereof. . . . [¶] (f) Any other provisions as may be necessary to carry out the purpose of this article."

"The CAARP rates are set by the Commissioner after public hearings, and are based on a number of classifications . . . . [¶] In most parts of the state, CAARP rates are higher than those offered by voluntary insurers." (*King* v. *Meese, supra*, 43 Cal.3d at p. 1223.)

"[U]nlike private insurance rate-setting systems, CAARP rate criteria are set out publicly, so the application of rate classification to an individual premium is a ministerial task and easily verified by the applicant." (*King* v. *Meese, supra*, 43 Cal.3d at p. 1233.) All insurers issuing assigned risk policies are required to charge uniform rates pursuant to criteria set out in the plan. (Cal. Code Regs., tit. 10, §§ 2460, 2498, 2498.1 et seq.)

Prior to January 1, 1991, a CAARP governing committee, the majority of whom were member insurance companies (see Cal. Code Regs., tit. 10, § 2421), had the authority to recommend to the commissioner whether, and to what extent, the rates should be revised. (*Id.*, § 2421.10.) Insurance Code section 11623, as amended in 1990, provides that "the commissioner shall administer and operate the plan as authorized by law," and to "assist the commissioner in carrying out the purposes of this article, the commissioner shall appoint an advisory committee composed of 15 members," eight members representing subscribing insurers and elected by the insurer members, four representing the public, two representing producers, and the remaining member "is the commissioner or his or her designee." (Ins. Code, § 11623, subd. (a).) "The advisory committee with the approval of the commissioner shall appoint a manager to carry out the purposes of this article . . . ." (*Ibid.*)

It is apparent from the above scheme that the rates charged for assigned risk insurance policies were closely regulated before the passage of Proposition 103.

### III

### PROPOSITION 103

Proposition 103, an initiative measure passed by the voters in November 1988, made "numerous fundamental changes in the regulation of automobile and other types of insurance." (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 812 [258 Cal.Rptr. 161, 771 P.2d 1247].) "The initiative begins with a statement of findings and purpose, asserting that '[e]normous increases in the cost of insurance have made it both unaffordable and unavailable to millions of Californians,' and that 'the existing laws inadequately protect consumers and allow insurance companies to charge excessive, unjustified and arbitrary rates.' The initiative's stated purpose is to ensure that 'insurance is fair, available, and affordable for all Californians.' " (*Id.*, at pp. 812-813.)

Proposition 103, inter alia, added certain provisions of article 10, chapter 9, part 2, division 1 to the Insurance Code, including section 1861.08.[2] Article 10 applies "to all insurance on risks or on operations in this state, except those listed in Section 1851." (Ins. Code, § 1861.13.) Although CAARP policies are not among the types of insurance listed in section 1851, this does not end our inquiry because it does not follow that section 1861.08 must necessarily apply to hearings to establish rates for policies under CAARP.

Section 1861.08 of the Insurance Code provides: "Hearings shall be conducted pursuant to Sections 11500 through 11528 of the Government Code, except that: (a) hearings shall be conducted by administrative law judges for purposes of Sections 11512 and 11517, chosen under Section 11502 or appointed by the commissioner; (b) hearings are commenced by a filing of a Notice in lieu of Sections 11503 and 11504; (c) the commissioner shall adopt, amend or reject a decision only under Section 11517 (c) and (e) and solely on the basis of the record; (d) Section 11513.5 shall apply to the commissioner; (e) discovery shall be liberally construed and disputes determined by the administrative law judge."

▆▆▆ Respondent maintains that "the adjudicatory procedures mandated by section 1861.08 do not conflict with the existing CAARP statute or regulations," that the CAARP statute and regulations do not preclude application of the procedures for administrative adjudication set out in Government Code section 11500 et seq.; and "the procedural aspects of Proposition 103 and CAARP are harmonized easily by construing Proposition 103's procedural provisions to augment the minimal procedural requirements of the existing CAARP scheme."

Even if we deem respondent to be correct in its claim that the plan contained "minimal procedural requirements" relating to the hearing procedures before the commissioner, it does not necessarily follow that the lawmakers intended that Insurance Code section 1861.08 govern the ratemaking hearings under CAARP.[3] We cannot ignore the policy of CAARP and its statutory language, which is inconsistent with section 1861.08.

---

[2]In 1990, the Legislature added to the Insurance Code the following sections: 1861.055, 1861.135, 1861.137, 1861.15, and 1861.16. Section 1861.055 requires the Commissioner to "adopt regulations governing hearings required by subdivision (c) of Section 1861.05 . . . ." (Ins. Code, § 1861.055, subd. (a).) We express no opinion on the applicability to CAARP of the foregoing sections or provisions of Proposition 103 other than section 1861.08.

As the parties do not expressly raise the broader issue of whether the California Administrative Procedure Act (Gov. Code, § 11340 et seq.) applies to hearings to establish rates under CAARP, we also express no opinion on this issue.

[3]We need not decide the issue of whether the ratemaking function of the Commissioner under CAARP is quasi-legislative or adjudicative in order to resolve the issue on appeal, and

## IV

### Section 1861.08 Is Inconsistent With CAARP

The regulatory scheme and policy of CAARP was aptly explained by a court in holding that Insurance Code section 11620 et seq. did not constitute an invalid delegation of legislative authority to the Commissioner: "Thus, when section 11620 of the Insurance Code declares that it is the policy of the law to allow the commissioner to issue a plan for the equitable apportionment of applicants in good faith entitled to insurance, the statute does not stand alone but must be considered in connection with its object and its background. If the statute was to be effective, great discretion had to be left to the commissioner to meet the various and complex problems with which he was to be presented. Rigid standards were not reasonably practicable. While the statute must furnish the administrator with a yardstick, it need not furnish a micrometer. The policy of the statute is clear. In our opinion, the yardstick furnished complies with constitutional requirements." (*Cal. State Auto. etc. Bureau* v. *Downey* (1950) 96 Cal.App.2d 876, 906-907 [216 P.2d 882].)

The statutes clearly contemplate that it is the commissioner who, "after a public hearing, shall approve or issue a reasonable plan," (Ins. Code, § 11620); the commissioner "shall administer and operate the plan as authorized by law," (*id.*, § 11623, subd. (a)); and it is the plan itself which shall contain "Rules and regulations governing the administration and operation of the plan." (*Id.*, § 11624, subd. (d).)

The language of the above statutes indicates clearly that the Legislature intended the plan itself to contain the rules and regulations governing the public hearings. The application of section Insurance Code 1861.08, which is not part of the plan, to hearings to establish rates under CAARP is irreconcilable with the pre-Proposition 103 statutory scheme for CAARP. Accord-

express no opinion on such issue. Nor do we need to address the broader issue of whether the California Administrative Procedure Act applies to CAARP. (*Ante*, fn. 2.)

Respondent offers no evidence or authority for its claim that there are only "minimal" procedural rules governing the public hearings required under Insurance Code section 11620. "The Insurance Commissioner has approved the separate rate manual designated in this section [Cal. Code Regs., tit. 10, § 2498.3; manual entitled Basic Rates: Private Passenger Automobile Non-Fleet]. This manual has been filed but for the present is separately published, not as part of the California Administrative Code." (Cal. Code Regs., tit. 10, § 2498.3; a similar provision, § 2498.5, deals with the manual of rules and rates for commercial automobiles under CAARP.)

These manuals are not part of our record, nor are they described in our record on appeal, so we are unable to evaluate respondent's claim that CAARP contained "minimal procedural requirements."

ingly, although framed in language of statutory harmony, respondent's real contention is that the voters by passing Proposition 103 impliedly repealed the preexisting statutory and regulatory scheme pertaining to hearings to establish rates under CAARP.

■ "But all presumptions are against a repeal by implication." (*Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 761 [268 Cal.Rptr. 476].) " 'The presumption against implied repeal is so strong,' the California Supreme Court has ruled, 'that "to overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible to maintain the integrity of both statutes if the two may stand together." There must be "no possibility of concurrent operation." Courts have also noted that implied repeal should not be found unless ". . . the later provision gives undebatable evidence of an intent to supersede the earlier. . . ." ' " (*Ibid.*; see also *Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419 [261 Cal.Rptr. 384, 777 P.2d 157].)

■ Insurance Code section 1861.08 cannot meet the above test for a repeal by implication because it does not evidence an undebatable intent to supersede the hearing procedure under CAARP and section 1861.08 is not irreconcilable with the provisions of CAARP. It simply does not apply to hearings to establish rates under CAARP.

Inasmuch as the electorate is presumed to be aware of a long-standing administrative practice (see *Lute v. Governing Board* (1988) 202 Cal.App.3d 1177, 1183 [249 Cal.Rptr. 161]), and "is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted [by initiative]," (*People v. Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380]), the failure of Proposition 103 expressly to limit the authority granted the Commissioner under CAARP or to change the provisions for hearings under CAARP is indicative of an intent to leave that part of CAARP as it stood. (See *Henning v. Division of Occupational Saf. & Health, supra,* 219 Cal.App.3d at p. 762.)

Respondent argues that under the rule of statutory construction that the more specific provision prevails over a general one, "Proposition 103 is more specific as to insurance rate hearings than the CAARP statute," and the "adjudicatory hearing procedures of section 1861.08 apply to CAARP rate hearings." However, this argument would require that we infer the voters impliedly repealed a part of the CAARP regulatory scheme, which we

cannot do because, as discussed above, Proposition 103 does not meet the test for an implied repeal.

In concluding that Insurance Code section 1861.08 does not apply to hearings to establish rates under CAARP, we express no opinion on the issue of whether the plan could properly adopt the provisions set out in section 1861.08 as part of the rules and regulations governing rate-setting hearings under CAARP. Nor do we address the issue, raised by respondent, of whether the application of Proposition 103's adjudicatory provisions to CAARP rate hearings would serve a salutary public purpose.

We only interpret the statutory provisions before us, without determining their wisdom or desirability. "Courts may not substitute their social and economic beliefs for the judgment of the Legislature elected by the people to enact appropriate regulatory legislation." (*Goodman* v. *Cory* (1983) 142 Cal.App.3d 737, 741 [191 Cal.Rptr. 272].)

### DISPOSITION

The judgment is reversed and the trial court is directed to deny the petition for peremptory writ of mandate. Appellant is entitled to costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.